Curia, per Evans, J.
The mortgage in this case was in the usual form. The words are in the present tense, *82 “ have granted, bargained and sold, and by these presents do grant, bargain and sell.” This, but for the condition, would be an absolute conveyance of the property., The condition is, that the deed is to be void if Bruerton shall save Bellune harmless from his liability on the guardianship bond to Cohen, the commissioner ; that is, the title shall re-vest in Bruerton on his saving Bellune harmless, but until that event happened, Bellune was certainly the owner of the negroes, and nothing can defeat his title, when asserted, except proof of the performance of the condition. His title is not to accrue on a future event, but it may be defeated by it, and he who claims under the mortgagor must shew that the condition has been performed. Has the defendant shewn it in this case 1 This inquiry renders it necessary to recur to the facts. On looking into the proceedings in an equity case, in Georgetown; between Bel-lune and the creditors of Bruerton, which formed a part of the evidence, it appears from the Chancellor’s decree that “ in January, 1839, some proceedings were had in this court, the nature of which did not appear, under which John A. Bruerton, on the 2d. February, 1839, executed another bond, with W. G. Bellune and John T. D. Britton as security; conditioned for thé faithful performance of his duties as guardian of Sarah Ann Small.” The first bond was signed by Bruerton and wife, but as the wife was not bound, and the bond, as to her, was void, it was simply the bond of Bruerton and Bellune. The object in requiring the second bond was additional security, and Britton’s liability was merely cumulative. By signing the bond, Britton became jointly liable with Bellune for Bru-erton’s default; and in this view of the case, there can be no ground for saying that Bellune is not entitled to the protection which his mortgage gave .him; and this was the view of Chancellor Dunkin, who, in the case above referred to, decreed that Bellune should have the benefit of his mortgage, to the exclusion of the other creditors of Bruer-ton. It was in evidence, that before this action was brought, the commissioner 'had reported a balance due by Bruerton to his ward of upwards of $7000, and that, therefore, he had not performed the condition of his gaur- *83 dianship bond, but had involved Bellune in a liability of $7000, which Bruerton was wholly unable to pay. This is conclusive, unless there be something in the opinion entertained by some of my brethren, that a mere liability to pay is no breach of a condition to indemnify and save harmless ; there must be actual loss incurred, that is, Bellune must pay the amount of the default before he can resort to his bond and mortgage. Such a proposition can never be sustained. The mortgagee may be utterly ruined, his property all sold, before he can resort to that which was intended to protect'him against these very consequences. Nesides,' it results from the very nature of the mortgage, that to defeat the estate which it conveys, the defendant must shew a performance of the condition on his part, viz: — that he, Bruerton, has performed his duty as guardian, so as to protect Bellune as his surety, or that in some other way Bellune has been discharged. But admitting the fact to be that the first guardianship was revoked, and that Bellune stands like any third person with Britton, as liable on the second bond for the whole default of Bruerton, still, according to tlie case of the Ordinary vs. Bigham & Hudson, 2 Hill, 512, Bellune would be liable for the default which occurred during the first guardianship. In that case it was decided, that where the Ordinary,, at the instance of the surety, had revoked the first administration, and had taken a new bond with other sureties, that did not discharge the surety to the first bond from the default which had occurred whilst he was surety. The new sureties were bound for the whole default, but the old sureties were only discharged from future liability' — they were jointly liable with the new sureties for any default which occurred during the first administration, and, therefore, a release to the second sureties operated as a discharge of the first. Unless there be some reason, which I do not perceive, for making a distinction between the security to the Ordinary for an administrator and a security to the Commissioner for a guardian, this case is decisive ' of the question, for Bruerton says he was in arrears before the second bond was given.
But the old question, which I supposed had been finally *84 settled in the cases of Stubbs vs. White and Spriggs vs. Camp, 2 Speers, 181, has been again brought into discussion, viz: — that, as by the stipulation in the mortgage deed, it was agreed that Bruerton should remain in possession until there was a breach of the condition of the bond, which the mortgage was intended to secure, trover would not lie. It might be sufficient to say, that there was a clear breach before this action was brought, ascertained by the report of the Commissioner and the evidence of Bru-erton, unless we come to what seems to me a very strange conclusion, that Bellune has no right to resort to his mortgage until he has paid the defalcation of Bruerton, that is, that his mortgage cannot avail him until after he himself has been ruined, perhaps, by a sale of his own property to pay Bruerton’s defalcation.
It may be admitted that the general owner, unless he be entitled to possession, cannot maintain trover, and, as a consequence, that before there was a breach, Bellune could not maintain trover against Bruerton, because, as to him, Bel-lune had agreed that he should have possession. But such an agreement was not assignable to others, either by Bruer-ton himself, or by sale or levy on the property for his debts. In Stubbs vs. White, the mortgagor sold the property before the day of payment; and in Spriggs vs. Camp, the sheriff had seized it under an attachment. These cases were decided on the principle, that the agreement, as to the possession, was personal to Bruerton; as to all other persons, Bellune had not only the right of property, by virtue of the mortgage, but the right of possession also. Any other construction would render the security of a mortgage of but little value, as the facts of this case very strongly shew. The negro was purchased at sheriff’s sale in Georgetown, run off secretly and sold in a remote comer of the State, near one hundred miles from the residence of the mortgagee. In any view which I can take of the case, the plaintiff is entitled to retain his verdict. As to the argument that he may receive the verdict and not apply it to satisfy the recovery against him on the guardianship bond, that is of no weight. Those whose business it is, will, no *85 doubt, take care of their interest in this particular. The motion is dismissed.
O’Neall, Butler and Frost, JJ. concurred.